## Marlin License

*Walter Kieler*, for appellant.

*Samuel J. Roberts*, Deputy Attorney General, for Pennsylvania Liquor Control Board.

LAMOREE, J., February 11, 1949.—This matter is before the court on the appeal of Mrs. Elsie Marlin from a decision of the Pennsylvania Liquor Control Board, refusing the application to transfer a beer distributing license from her husband, Ted Marlin, to herself. The appeal was properly filed, date for hearing set and the case was regularly assigned and heard in open court on February 2, 1949.

At the time the case was called for hearing, counsel for Mrs. Marlin offered in evidence a stipulation entered into between himself and counsel for the Liquor Control Board whereby the matter was to be determined by the court from the record of testimony taken before the board's representative in Erie, Pa., on November 5, 1948.

From the record before us it appears that Ted Marlin and Elsie Marlin are husband and wife. Ted Marlin had been the holder of a beer distributor's license, under the fictitious name of A. Marlin, for about 14 years. Mrs. Marlin had assisted in conduct-

ing the business for seven or eight years and was entirely familiar with it. Mr. Marlin was desirous of selling the business but was unable to find a buyer willing to meet his price. He then decided to give the business to his wife, Elsie Marlin. On August 10, 1948, Mrs. Marlin filed with the Liquor Control Board an application for transfer of the importing distributor's license for the premises numbered 202-204 South Jefferson Street in the City of New Castle. On September 13, 1948, the application was refused by the board without a hearing for the following reason: "It appears that you will not be the sole owner of this establischment nor the only person making investment therein, nor the only person who will derive profit from the business if the license is transferred to you." Mrs. Marlin then requested a hearing before the board and a hearing was held in Erie, Pa., on November 5, 1948. At the hearing J. O. Taylor testified for the board and Mr. and Mrs. Marlin on behalf of applicant. On January 5, 1949, the application was refused, according to the board, because the evidence adduced established the following fact: "It appears that the applicant will not be the sole owner of this establishment nor the only person making investment therein nor the only one who will derive profit from the business if the license is transferred to the applicant."

We have carefully examined the testimony upon which the board based its finding and are of the opinion that such finding is not warranted by the evidence produced at the hearing. It may be that the board views such transactions between husbands and wives with disfavor, but that does not alter the fact that in the eyes of the law such transactions are clearly legal. Mr. Taylor's objection to the transfer was because no financial consideration was to be paid for the business and that Mr. Marlin when asked about his

future intention stated he contemplated buying an interest in the Kopen Distributing Business in Sharon, Pa. On cross-examination Taylor testified the consideration was natural love and affection. That consideration is sufficient. Mr. Marlin testified that he had a proposition in a beer distributing business in Sharon, Pa., as well as several other business propositions in other fields and that he had not made any definite plans. He also testified that he would not have any interest in his present business once the transfer of the license was approved, and that he would derive no profit from the business. There is certainly no evidence before us that would contradict Mr. Marlin's sworn testimony. Mrs. Marlin testified that she would be the sole owner of the business and that all profits arising therefrom would go to her. Her sworn testimony is uncontradicted and is entirely credible.

Nowhere in the testimony can we find anything to indicate that the proposed transaction was not being done in good faith. There is no legal prohibition to prevent a husband from transferring his business to his wife when the same is done in good faith and in the absence of fraud. There is not the slightest bit of evidence wherein even an inference of fraud could be drawn in the case at bar. The presumption is that all sworn witnesses will and have told the truth and the testimony of Mr. and Mrs. Marlin is entitled to that same presumption. Mr. Taylor's testimony did not destroy the presumption or establish any fact to warrant the refusal of the application to transfer the license.

Courts will not overrule the rulings of the Liquor Control Board when based on warranted findings from competent evidence, but they are also duty bound to protect the individual's rights against unwarranted findings from incompetent evidence and undefined suspicion.

The Liquor Control Act affords ample protection against any violations of the act and all licensees are subject to suspension or revocation of license when the licensee is found to be guilty of the enumerated offenses.

Our careful examination of the record before us leads us to the conclusion that the transfer of the license should be approved in this case, and we are accordingly entering the following

### Order

Now, February 11, 1949, the order of the Pennsylvania Liquor Control Board, dated January 5, 1949, refusing the application for transfer of importing distributor's license by Elsie Marlin for premises numbered 202-04 South Jefferson Street, in the City of New Castle, Lawrence County, Pa., is overruled and it is ordered and directed that the said license for the premises numbered 202-04 South Jefferson Street, New Castle, Lawrence County, Pa., be transferred to Mrs. Elsie Marlin. The prothonotary is directed to forward a certified copy of these proceedings to the Pennsylvania Liquor Control Board, Harrisburg, Pa. Costs to be paid by the Pennsylvania Liquor Control Board.